is number 182380 Presidio Components, Inc. v. American Technical Ceramics. Mr. Ahearns. Thank you, Your Honor. May it please the Court. This appeal is from a remand that came out of this Court, and the particular topic that Presidio has appealed was the District Court's abuse of reasonable royalty. This Court, when it remanded the case to the District Court, was for purposes of the Court conducting a jury trial, if necessary. So why is it that the District Court couldn't consider reasonable royalty with respect to all of the sales at once? What's the matter with that? Your Honor, we believe it is entirely proper for the District Court to do one of two things, and we believe one of which is just what you identified, and that is a reasonable royalty for the entire duration of the infringing sales. That was okay. That was okay. The error and the abuse of discretion was to not consider the corollary-related evidence relating to those same sales. And that evidence related to the period in which the preliminary injunction was in effect. Well, it doesn't relate to the period in which the injunction was in effect, because during that period there were no sales. It was the sales that occurred after the original damages trial period and in the periods of time when the injunction was not in effect. So we have really three different time period segments. You have the original damages period that the first trial was conducted upon, and that was... And the injunction goes into effect in March of 2017. Correct. Based on both the District Court's deferral of its implementation and then this Court's additional deferral of its implementation, there were sales from February 21st of 16 through March 17th of 17, and those were an enormous number of sales, unit sales. And the District Court did allow on remand that evidence solely for purposes of an accounting, not for purposes of whether those additional unit sales would drive up the reasonable royalty analysis. No evidence was permitted as to the average selling price of those additional 15 million units. And it really, if you look at the... What did you explain to Judge Huff your evidence would be? Something different from what you said here, because as I... Just correct me. My understanding is that what you have said is ATC raised its price. It raised its price by... $1.58. $1.58. Precisely so that when the money came in it could turn around and pay it back to you. So on a per unit basis, putting aside possible cost savings from volume, that can't possibly change the profit. In their pocket, out of their pocket. Theoretically, except that's not what happened, so they did pocket the money because they didn't have to pay presidio the $1.58, which was the lost profit award that this Court reversed. That was later, right? It was later, but the money never left the pocket of ATC. They told their customers that they needed to jack the price up by $1.58 to cover... The market was making an assumption, which eventually proved not to be correct. But in terms of assessing the significance of the market data, you have to view it as the parties viewed it at the time. Correct. And the reasonable royalty analysis with looking at what future facts come into being during the course of the infringement, although the analysis would take place at the hypothetical negotiation at the date of first infringement, certainly this dramatic price increase, taking that money under the guise that it was going to have to be by $1.58 per unit times the 92% of their sales. So you're saying they should be punished for pocketing the money, but I'm not sure that's relevant to the reasonable royalty. Absolutely not punished for pocketing the money, but what in the analysis of a reasonable royalty, and this all really falls under the scope of the judge just didn't permit this evidence in. So she abused her discretion by partially reopening the record, i.e. the additional number of unit sales, but the mistake was to not then open up the record in its entirety. Yeah, but maybe she could conclude that the additional evidence wasn't all that significant or helpful. Well, there was no opportunity to divine that. She did not allow Presidio. We offered to make a proffer from our expert as to what his opinions would be based on the new evidence, and she declined or denied Presidio's opportunity to make that proffer. Where did she do that? She did that at Appendix 38, and it's footnote 5, and it says, Is that the reconsideration order? Yes, I believe it is. Yes. Footnote 5 at Appendix 38. In addition, the court specifically... Wait, wait, wait. Sorry. Okay. May I quote from it? Yeah, I see it. Specifically rejects Presidio's request to prepare a supplemental report for purposes of a proffer to the court. And so what happened then is... So the district court is going to open up the record to an entire time period of infringement, which, back to your original question, Judge Toronto, there was a third period of sales, which is after the injunction was vacated by mostly this panel. In November of 2017. And then between November of 2017 and August of 2018, when the district court issued another injunction, there was that additional time period of sales. So there are really three different time segments of sales. And the court, like I said, was going to allow just simply the number of units for purposes of an accounting. But a jury trial, juries aren't asked to do accountings. They're asked to weigh evidence, and we were hamstrung by not allowing to put in not only the evidence of the increased average selling price, the increased profitability, but in addition, making any type of factual presentation and through our expert as to just the sheer volume of additional sales and how that would impact the reasonable royalty analysis. So the court disallowed any of that additional evidence, and we believe that is how the court erred and abused her discretion by partially reopening the record, not fully reopening it. In the alternative, and of course, this court's mandate in the original appeal could have been taken in an entirely different way, which is to have a new trial on the same period of time as the original trial, the same number of units and all of the information and evidence that was presented, and then take into account in the context of an ongoing royalty proceeding, which the district court would handle, to take the additional evidence that we've just talked about into account. Now, the district court didn't follow that potential eventuality from the mandate. It followed the longer full time period for its analysis, but like I said, limited the evidence that it was going to allow Presidio to present. If this panel has a particular view on how its mandate should have been interpreted, i.e., should it have been a new trial for an entire full blown time period? As to this, it just says remand for a new trial, our mandate. It doesn't say one thing or another about a question that is usually just in the district court's reasonably exercised discretion. Is there a need for new evidence? So the judge was not forbidden to reopen, and the judge did not say that she was forbidden. So as I keep thinking about this, it comes back to what I think Judge Dyke was referring to earlier. What basis did you provide to indicate that this would be a relevant and fruitful exercise? When you point to the addition of $1.58 in terms of a reasonable royalty based on what the parties anticipate the profits to be, that seems to me to be a complete wash because the money was going to go in one pocket and out the other. Whatever fact happened to it later? And then the only remaining question is, is the increased volume such that their costs on a per unit basis diminished and therefore their per unit profit increased and that all of this would have been part of an anticipation in a hypothetical negotiation? Why couldn't she say there's just not enough here for that? Potentially she could have, but she didn't even allow that whole line of discussion through briefing or anything else. She issued a scheduling order that simply said we'll get updated sales figures in units. The expert can't conduct any additional substantive damages analysis. We offered and requested a proffer to present exactly what you were just outlining, which is how this would actually impact a reasonable royalty, and then she did not allow that. And so back to the mandate issue. Presidio agrees and doesn't take issue with the judge having the choice, really, between either of the two remedies that we are asking for here, which is either the full-blown time period with all the relevant evidence presented to a jury because a jury is the one that finds what a reasonable royalty is, not the judge, or alternatively the other analysis, which is having the trial in the same time period but then having an ongoing royalty proceeding. The fact that she chose the former, Presidio is perfectly fine with that and does not challenge that decision. In other words, her interpretation of the mandate to look at a reasonable royalty for all the units, and if this court intends to or, I'm sorry, does affirm the injunction, then the time periods for sales, we have a captured number of units that won't change if the injunction is upheld. So under that scenario, it would probably be the most efficient thing to have a new trial for the captured time period of all the units that are already on the books and won't be changing, and then allowing the presentation through expert testimony and factual evidence of these other facts and circumstances. What was the per-unit figure that your expert testified to on reasonable royalty in the April 2016 trial? It was $0.25 per unit. And that's what this award is based on? That's correct. It took your figure and then said nothing but the number of units. There's no reasonable basis for changing anything but the number of units according to how many were sold. Right. Well, we stipulated to the $0.25 because, based on the inability to present any other evidence of the type we've been discussing. It seems to me not insignificant that that figure was your figure. If it was stipulated to a compromised figure, then maybe you would have an argument that says the per-unit award in this case is wrong because we needed new evidence on that that would have changed our evidence from or even get back to the evidence that we had earlier. The stipulation, the parties, both experts had agreed, effectively agreed, that $0.25 per unit was the appropriate royalty rate for purposes of the trial that encompassed the damages time period from December of 2015 through February of 2016. And that's why the parties stipulated. Do I remember right? That was also in your expert's expert report before the trial that was actually held. His figure for the much longer period that got truncated when the re-exam altered the claims. That's correct. So that figure didn't change, notwithstanding a pretty dramatic difference in number of units actually sold. Well, if you're referring to the number of units that were sold subsequently, you're talking about the prior. Right. So we actually have a situation where all of the analysis, which not just the number of units, but the average selling price and the profit, that was not a dramatic increase relative from the longer prior time period to the shorter prior time period. So why shouldn't Marshall be a different royalty figure for the two periods? Because of the jury verdict? No, because the fact of the matter is that from after the first trial, 92% of the total number of sales that are now at issue were made. So effectively the district court would be having a jury take evidence of average selling price and profits on 8% of universe of units and apply that to come to a reasonable royalty for the other 92% but not allow them. To answer my question, why should there be a different reasonable royalty for the two periods? Well, if we're going to have a new trial that encompasses the period after the first trial and the stipulated amount, the new royalty amount should be different because there's dramatically different evidence that would support it. Are you relying on the Amato and Activision cases? Not for this argument? Not for this argument. That was in connection with our alternative argument about the ongoing royalty. If there was a separate determination post-verdict for these particular sales? That's right. That's the only thing you're relying on those cases for? I believe that's right. And what is the status of the re-examination? The re-examination is on appeal to the Patent Trial Appeal Board. Okay. We're out of time. We'll give you some time for rebuttal and to address the cross-appeal. Thank you. Mr. Cahill. May it please the Court. My name is Ron Cahill, and together with my partner, Heather Rapicki, we represent American Technical Ceramics Corporation. I only want to touch briefly on the supplemental damages issue, and we think it's a supplemental damages issue because that's what Judge Huff ordered in 2016 at Presidio's request. We don't understand that Presidio actually gets to ask for a new number now because that became part of the mandate when they didn't appeal it in 2016. But, yes, the number was $2,500. I'm sorry, I didn't understand what you just said. Okay. There was no reason for royalty actually awarded less. Correct. And maybe it would help if we walked through. You think that our mandate precluded you from putting in the evidence? That seems pretty hard already. So let me walk through the timeline for just a minute. Is that the argument? Excuse me? Is that the argument, that the mandate precluded the court from? So this court doesn't have to go that far. That the mandate precluded the district court from allowing the evidence that they're talking about? In 2016. No, answer my question. Okay. I believe it does, but this court doesn't have to go that far. Okay. So the timeline worked like this. So we had a damages period for trial. As the court correctly noted, it was December to February 2015 to 2016. We had our trial in April of 2016. Post-trial, we had post-trial motions, as one typically does. And in June of 2016, both parties filed motions. Presidio filed their motion for permanent injunction. They also filed a motion for supplemental damages. And this was months after the jury verdict. And what they asked the court for was a continuation. Because it was clear, it was on the record, that ATC was continuing to sell the 550s and plan to unless and until the injunction issued. Customers need the part. And the continuation in terms of the lost profits number or reasonable royalty number? It was the lost profits number at the time. The judge continued. Presidio asked for, and the judge continued, the damages number from trial, which was $1.58. Judge Huff, on the same day, ordered both the supplemental damages and the injunction with a sunset, a 90-day sunset at that time. It was extended by this court. Presidio never at any time said, well, the damages are different after the verdict. They wanted the damages to be the same after the verdict. And Judge Huff ordered the damages to be the same after the verdict in her supplemental damages ruling, while the injunction was going to go into effect with a sunset. Can I just add, I think I understand that point, and that goes to their, I think what they described as their alternative argument about a split period. Put that completely to one side. Why was Judge Huff right in saying, I will not let you put in expert testimony about why the reasonable royalty should be more than $0.25 per unit? Well, the reasonable royalty is $0.25 per unit because we agreed to it. After that? After the ruling saying they couldn't put in any evidence. Because she was doing the same thing she had done on her supplemental damages. She had chosen to extend the damages number. But there was no reasonable royalty damages number from the trial. Well, there was a damages number from the trial. She's saying the profit situation hadn't changed. She ruled before the profit situation hadn't changed after the verdict. And the supplemental evidence here relates to profits, insofar as it in turn relates to reasonable wealth. Well, that is still a work in progress because – Never mind. My question is too complicated. Okay. Judge Huff had it within her discretion to continue the damages. The damages for the trial period are $0.25. And she could, within her discretion, there's no case that says otherwise, continue those damages for the additional sales after the verdict before the injunction finally went into effect. And all she did was update the accounting like she did in 2016. Okay. Unless my colleagues have other questions about damages, can we talk about the injunction? Sure. It seems to me that one thing that's perhaps a little questionable about what she did is disregarding the non-infringing alternative, the 560. But I think, as I read her opinion, what she's saying is, well, the test period that you, the Federal Circuit, thought you were going to get didn't happen because the 560 wasn't sold during the test period. But I'm still not going to take it into account because you haven't proved the impact that that would have on irreparable injury. And it seems to me perhaps she has a point, because while you brought in evidence that the 560 was now being sold to a couple of customers, there's no expert testimony that you put in at that point about how the availability of the 560 in the future would show that there was no irreparable injury. Fair enough? I mean, you didn't put in any expert testimony, right? We did not put in expert testimony. We put in the testimony of an ATC witness who talked about the facts. But no, I believe there wasn't an opportunity. There was no expert briefing schedule. Well, I mean, our opinion said you could put in additional evidence on the irreparable injury, right? We put in fact evidence, yes. But not expert? We did not put in expert testimony, no. So why wasn't she within her discretion in saying the fact evidence wasn't enough to defeat irreparable injury? Because the 560 was in fact available, and we know that customers have bought it in the past, and we know that its performance is better than the Presidio Capacitor at a lower price. It only makes sense that it would sell the way it had in the past. And when it did go back on the market, the data started to show that. Okay, go ahead. Go ahead. Okay. I would like to talk about causal nexus for a moment. We think Judge Huff decided that because the parties compete that in injunction issues. And when it comes to causal nexus, the infringement evidence doesn't help to tie the features of the infringing capacitor to demand from customers for capacitors that have a low insertion loss at high frequencies. The infringement evidence at trial did something else. And it shows up clearly in the J-Mole rulings, for example. We asked for J-Mole of no infringement because it hadn't been shown that fringe effect capacitance affected insertion loss at high frequencies. And Presidio's response to that was, well, we didn't have to do that. It wasn't, oh, we did it. It was, we didn't have to do that. The patent doesn't call for it. And they never had to prove that. And in fact, they didn't prove it. The testing was designed to show that one particular form of capacitance that ATC asserted was active in this capacitor wasn't. That doesn't show that fringe effect capacitance has an impact on the performance that the customers buy. And so we think there is a lacking entirely of a link between infringement and why the customers buy the capacitor. Now, Judge Huff's response to this is largely, but they compete. She actually said, but they compete, and cited the Broadcom case. And we think that doesn't make sense because in the Broadcom case, there was undisputed evidence linking the claimed invention to customer demand. She also said, well, you know, you ATC complain about the sales data, but can't deny Presidio sales went up. But that's not a clear link either, right? These parties do compete. If Pepsi took all of their soft drinks off the market, Coke sales would probably go up. But that's not evidence that Pepsi infringed something. That's just evidence that they compete. And that's what we have here, and Judge Huff relied on that. And then finally, she relies on this one hypothetical statement that Presidio's expert made at trial. And it was a mathematical statement that the lowest value capacitance impacts the highest frequencies for capacitor performance. And that's a mathematical truth, and Dr. Huebner put it in those mathematical terms. He said it varies with one over the square root. The problem with that is it's just math. It's not the 550 capacitor. There's no evidence that the 550 capacitor had a fringe effect capacitance because no one measured it, had a fringe effect capacitance that impacted any frequency, whether you do the math or not. It simply wasn't there. The value wasn't there. It couldn't show that the 550 had some impact from fringe effect performance that customers wanted. And so we think the proof fails entirely, and that Judge Huff committed error when she ruled that there was a causal nexus. I'd also like to speak a minute about the ongoing reexamination. The reexamination affects this appeal in at least two ways. One is we now have multiple repeated indications from the PTO that this patent will be found invalid. We're now past the final rejection and on to appeal at the PTOB. We think there's plenty of languaging cases. Well, maybe not plenty, but there's some, including from Justice Kennedy, saying that injunctive relief is extreme and we shouldn't be granting it when patents are of dubious validity. I think he was particularly concerned about vagueness. And here this patent is of dubious validity. Now, Judge Huff… Well, if it's held invalid, the injunction will be vacated, right? It will be. Well, that will be up to Judge Huff, but I expect it will be. Well, if this is the final determination of invalidity, the patent's going to have to go. It just may take a while, right? The board process hasn't even, certainly not been completed. Maybe it's just gotten started. The appeal brief was filed in October. Okay. And so… And then it would presumably come here. I would expect the board… And this patent has about two and a half years left on it. That sounds about right. The other way it impacts this appeal is the ongoing creation of intrinsic evidence, including statements about the very testing that I was just talking about and how it impacts the causal nexus. Presidio is characterizing those tests in the reexamination, and we think those characterizations should be considered. Now, we had asked this court for a stay, and it was denied, but one possible approach would be to remand it to Judge Huff to have her consider the substance of the reexamination. I'm sorry, but why would that require a remand? Isn't the judge, a district judge with an outstanding injunction, always have the ability to modify the injunction in light of new circumstances if you met that standard? And it might simply be premature when all you have is an examiner's decision, which doesn't have a final effect until two layers of review are completed or bypassed. Okay. I was laboring under the understanding that Judge Huff could not do that, but my understanding isn't conclusive. Okay. Anything further? Nope, nothing further. Okay. Thank you. Mr. Ahrens, we'll give you a couple minutes here. We'll give you three minutes. Thank you very much, Your Honor. With respect to the original issue, I meant to point the court to Appendix 328 and 331, which happened to be the chart showing the data relative to the selling price and the issue of the unit sales on the royalty topic. With regard to the issue of the injunction, this court mandated that the district court reconsider the issue of irreparable harm, irreparable harm only, not the other three eBay factors, and she did that. And she did that by doing precisely what this court said, which is to look at, quote, consider whether consumers have turned to non-infringing alternatives to the BB capacitor, this is from this court's opinion, such as the 560, after the 550 series capacitors became unavailable, or whether Presidio's sales of the BB capacitors have increased because the 550 series is no longer on the market. That's what this court asked her to do, and kind of in contradistinction to the royalty topic, she did exactly that. She took all kinds of new evidence, which demonstrated precisely those two points. ATC, for one reason or another, chose not to leave the 560 on the market when the 550 was enjoined. That was their choice, but the practical fact is that there was, therefore, zero evidence that sales of capacitors were 560 sales as opposed to BB sales when the 550 was off the market. Yeah, but there was evidence in the record that the 560 was competitive, right? That doesn't undercut the fact of no irreparable harm as somehow being demonstrated because they chose to take the 560 off the market. They had this court's analysis, and they decided— I don't think they gave up the point by not selling the 560 during the period of the injunction. The question is, on the record as a whole, does the fact that the 560 will now be available mean that there is not irreparable injury? Correct, and in fact, the district court looked at— in her original decision granting the injunction in the first go-round, there were three things that she looked at and cited to. One is the nature of the direct competition between the parties in the same market with head-to-head products. The other was the fact that Presidio doesn't license its patent, and so those are both factors that supported her irreparable harm finding the first time around, and those were undisturbed on appeal here. It was only her third stick in the bundle, which was the lost profit analysis that she tacked on as an additional basis for finding irreparable harm, and that's why when it went back to her to consider, she looked at what happened to Presidio's sales when the injunction went into place. They went up dramatically. What happened when the injunction was not in effect and 550 was back in the market? Presidio's sales decreased. Those were directly on the issue of what this court asked her to consider. She did not abuse her discretion by taking that into account. Okay, thank you. Thank you so much. Mr. Kagan, do you have anything further? I think I have a minute or so. May I? Yes. This court's mandate on the injunction was broad. The court asked the district court to consider the appropriateness of the injunction. She was free to consider whatever she needed to consider, and she did, but she relied almost exclusively on competition. Now, Mr. Ahrens makes a correct point. The first time around, Judge Huff's order was based on competition between the parties. Presidio didn't license its patents and lost profits. And when this court reversed the lost profits award, it said there isn't enough here for the injunction order and vacated it for reconsideration by the court. We understand, and we think the court understands, that competition isn't enough. There's got to be more than competition between the parties to justify irreparable harm. And here we think that's lacking because there is no causal link. Okay. Thank you. Thank both counsel. The case is submitted.